JOHN W. MONTEITH AND WIFE, NETTIE A. MONTEITH, v. WILLIAM C. WELCH AND WIFE, VELMA WELCH; LESLIE R. ROGERS AND WIFE, MARY D. ROGERS; AND THOMAS H. FRANKS, TRUSTEE.

(Filed 19 September, 1956.)

**1. Mortgages § 27: Payment § 3—**

The trustee in a deed of trust is not, by reason of his position, the implied agent of the holder of the notes to receive payment, and where he has no actual or apparent authority to collect the debt, payment to him of the unmatured notes secured by the instrument does not discharge the debt.

**2. Deeds § 5—**

The date recited in a deed is at least *prima facie* evidence that it was executed and delivered on that date.

**3. Mortgages § 28—**

Where deed to purchasers is dated prior to an unauthorized cancellation of a deed of trust by the trustee, or even if the deed to the purchasers and the unauthorized cancellation be made the same day, the purchasers are not protected by the cancellation unless the cancellation is made prior to the execution of the deed, and in fact relied on, with the burden upon the purchasers to show that in fact they relied upon the cancellation. G.S. 45-37.

**4. Same—**

A registered deed of trust is notice as to its contents, and therefore, where the trustee, without possession of the notes, makes an unauthorized cancellation prior to the maturity of the notes, purchasers, even though they purchase at the same time the unauthorized cancellation is made, upon the mistaken belief that the trustee was authorized to receive payment and cancel the deed of trust, are not protected by the cancellation, since they have notice that the notes had not matured and of want of authority of the trustee, and where loss must fall on one of two innocent persons, it should be borne by the person who occasions it.

**5. Principal and Agent § 7d—**

> Where one of two innocent parties must suffer loss occasioned by the wrongful act of a third person, the party whose act occasions the loss should suffer it, even in the absence of any moral wrong or positive fault on his part.

**6. Same—**

> The principal will not be held to have ratified the acts of his agent unless the act of the principal relied on as a ratification is accompanied by an intent to ratify the unauthorized transaction, and therefore ratification cannot be inferred from acceptance by the principal of benefits to which he is entitled irrespective of the unauthorized act of the agent.

**7. Same: Mortgages § 28—**

> The acceptance by the holder of notes secured by deed of trust of payments from the trustee subsequent to the unauthorized cancellation of the instrument by the trustee is no sufficient evidence of an intent on the part of the holder of the notes to ratify the unauthorized cancellation, since the holder of the notes is entitled to payment, notwithstanding the unauthorized act of the trustee.

JOHNSON, J., not sitting.

APPEAL by defendants Welch from *Nettles, J.*, May-June Term 1956 of HENDERSON County.

Plaintiffs seek to have expunged from the record an asserted unauthorized cancellation of a deed of trust.

On 16 June, 1949, Leslie R. Rogers and wife executed a deed of trust to Thomas H. Franks, trustee. The trust instrument secured the payment of thirteen notes, payable to plaintiffs, given for the purchase of land therein described. The first twelve notes were for the sum of $1,000 each. The last note was for the sum of $600. One note was payable on the 16th of June of each year, beginning 16 June, 1950. Interest was payable semiannually. The deed of trust was duly recorded 17 June, 1949.

Rogers and wife conveyed the lands described in the deed of trust to the defendants Welch by deed dated 7 October, 1952, recorded 15 October, 1952.

Notes 1, 2, and 3 were paid by the defendants Rogers when they became due. On 15 October, 1952, Thomas H. Franks sent plaintiffs his check for the payment of the interest to be due on 16 December, 1952. Upon receipt of the Franks check, plaintiff telephoned to inquire why Franks was sending his personal check. He replied that the defendants Rogers were arranging for a sale of the property to the defendants Welch, but that Welch did not have the money then available, but when Welch got his money plaintiffs would be notified so that they could

bring their notes and deed of trust to Hendersonville for payment. Plaintiffs heard nothing further from defendant Franks.

Entry was made on the margin where the deed of trust was recorded reading as follows: "The notes secured by this deed of trust having been paid in full, the deed of trust is hereby canceled of record, this the 15th day of October, 1952. Thomas H. Franks, Trustee. Witness: Dorothy Kilpatrick, Assistant Register of Deeds."

The evidence discloses that plaintiffs learned in May 1953 that defendants Welch had purchased the property described in the deed of trust. Plaintiff testified: "I met Mrs. Welch when I went to her home on the 17th day of May, 1953. I went to her home to find out something about the Rogerses and when they would be able to pay it. When I got there, she said, 'We have already bought the place.' That 'the deeds were drawed last October,' and I asked her if she knew we were carrying a deed of trust and these notes, and she said that she did, but that they had paid their lawyer to look after that for them." Plaintiff further testified: "The next time I had contact with Mr. Franks was in May. We had come by Mr. Welch's, the man that owned the farm at that time. He is a defendant in this action. We found out that they had already bought the place, so we came over to Mr. Franks' office and he wouldn't talk to us, so we went to Brevard and employed our lawyer Mr. Ralph Fisher. After that time we received this amount in a half dozen payments, I guess. The last payment was made the first day of October, 1953. The first payment was made about a week after the 17th of May, 1953. Between May and sometime in October Mr. Fisher collected the sum of $7,100."

Defendant offered no evidence. The jury, under a peremptory charge, answered the issues as follows:

"1. Was Thomas H. Franks by virtue of his office as Trustee in the deed of trust set forth and described in the pleadings herein filed authorized and empowered to cancel the same of record as appears on the margin thereof in the Office of the Register of Deeds in Deed of Trust Book 160 at page 276 of the Henderson County records?

"Answer: NO.

"2. Was said Thomas H. Franks, at the time of the cancellation, acting as attorney or agent of the plaintiffs, as alleged in the Answer?

"Answer: NO."

Upon the return of the verdict, judgment was entered declaring the cancellation null and void and of no effect. From this judgment defendants Welch appealed.

*Potts & Ramsey and Redden & Redden for plaintiff appellees.*
*B. A. Whitmire and L. B. Prince for defendants Welch.*

RODMAN, J.  Defendants insist that Franks, the trustee, was authorized to receive payment of the notes and to cancel the deed of trust; and hence they are protected by the cancellation entered of record.

The assertion that Franks, the trustee, was authorized to collect the notes and thereupon to cancel the deed of trust finds no support in the evidence or in law.

Plaintiff testified: "I never authorized Mr. Franks or any other person to collect any money represented by these notes secured by the deed of trust."

The trustee never had possession of the notes or deed of trust.  The notes were not due when Welch purchased the land or when the entry was made on the record reciting payment.

The recorded deed of trust was notice of all of its provisions.  *Collins v. Davis,* 132 N.C. 106; *Insurance Co. v. Knox,* 220 N.C. 725, 18 S.E. 2d 436; *Blankenship v. English,* 222 N.C. 91, 21 S.E. 2d 891.

"The general principle supported and recognized by the cases is that the mere naming of one as trustee in a trust mortgage or deed does not constitute him the agent of the bondholders for the purpose of receiving payment.  On the contrary, the authority of the trustee to receive payment must affirmatively appear, either expressly or as an implication specially to be gathered from the terms of the trust instrument and bonds."  36 Am. Jur., 896.

*Walker, J.,* speaking in *Wynn v. Grant,* 166 N.C. 39, 81 S.E. 949, said: "1. Payment of money due on written security, to an agent who has not either possession of the security or express authority to receive such money, is not good, and the principal may compel the debtor to pay it again.

"2. The facts that a loan is made through the agent, and that he has collected the interest, and that he has, in special cases, been authorized to collect the principal of particular mortgages, are not evidence of general authority to collect moneys due his principal, and one who pays to him the amount of a mortgage, without his having the mortgage in his possession, does so at his own risk.

"3. Even though an agent has authority to receive payment of an obligation, this does not authorize him to receive payment before it is due."

Since Franks was not, because of his position, the implied agent of plaintiffs and had no authority, actual or apparent, collection by him of the debt evidenced by the unmatured notes was not a payment.

Notwithstanding the lack of authority of Franks, the trustee, to receive payment, were the defendants protected by the cancellation entered on the records?

The statute, G.S. 45-37, provides: "Any deed of trust or mortgage registered as required by law may be discharged and released in the following manner:

"1. The trustee or mortgagee or his or her legal representative, or the duly authorized agent or attorney of such trustee, mortgagee or legal representative, may, in the presence of the register of deeds or his deputy, acknowledge the satisfaction of the provisions of such deed of trust or mortgage, whereupon the register or his deputy shall forthwith make upon the margin of the record of such deed of trust or mortgage an entry of such acknowledgment of satisfaction, which shall be signed by the trustee, mortgagee, legal representative or attorney, and witnessed by the register or his deputy, who shall also affix his name thereto.

. . .

"Every such entry thus made by the register of deeds or his deputy, and every such entry thus acknowledged and witnessed, shall operate and have the same effect to release and discharge all the interest of such trustee, mortgagee or representative in such deed or mortgage as if a deed of release or reconveyance thereof had been duly executed and recorded."

Defendants insist that this statute, as interpreted in *Bank v. Sauls*, 183 N.C. 165, 110 S.E. 865, is conclusive and affords them complete protection.

The case on which they rely is not authority for the position taken by them. There the mortgage was canceled by the mortgagee, the payee of the note. There a creditor relied on the cancellation which had been made by one who had the apparent right to receive payment and to cancel. There the notes secured by the mortgage were past due and the mortgagee certified to the bank that they had been paid a d satisfied, and there was nothing which pointed to any transfer of he mortgage securing the same.

Here the record shows the notes were not due, the deed from the owners of the equity of redemption to the defendants bears date 7 October, 1952. The cancellation does not purport to have been made until 15 October, 1952. True the deed to defendants was recorded on 15 October, 1952, the same day on which the asserted cancellation was made.

Defendants, in their answer say:

"That all monies paid to the said Thomas H. Franks by these defendants was paid to him in his capacity as a representative of the plaintiffs. That if any funds paid by these answering defendants were not properly and legally applied to the indebtedness, then these defendants are in no way in fault nor are they answerable therefor."

*Clark, C. J.,* in *Bank v. Sauls, supra,* says:

"The statute is plain, and in the absence of fraud participated in by the creditor or purchaser, if the statute is followed the creditor is protected by the entry of cancellation of the mortgage which, if made in the manner provided in the statute, is conclusive."

This language must be interpreted in the light of what was said in *Smith v. Fuller,* 152 N.C. 7, 67 S.E. 48. *Manning, J.,* there said: "It will be observed that the entry of satisfaction of the mortgage on the record of its registry was made by Whitley, the mortgagee; was in proper form, and was made more than four and one-half years before Smith purchased. This is not the case of the attempted cancellation of a mortgage or deed of trust by a person not authorized to make the entry of satisfaction. An existing, uncanceled mortgage, properly admitted to registration, is constructive notice to subsequent purchasers of the mortgage premises of the right of the mortgagee; but a mortgage or deed of trust properly canceled by a person authorized to cancel it, is notice to no one; it continues no lien upon the property."

The cancellation made by Franks could not, in any event, protect defendants unless it was made before they purchased and in fact purchased relying on its validity. The burden of establishing that they purchased without notice of the unauthorized cancellation was on defendants.

The date recited in a deed is at least *prima facie* evidence that it was executed and delivered on that date. *Fortune v. Hunt,* 149 N.C. 358; *Lyerly v. Wheeler,* 34 N.C. 290; *Sandlin v. Weaver,* 240 N.C. 703, 83 S.E. 2d 806; *Turlington v. Neighbors,* 222 N.C. 694, 24 S.E. 2d 648.

If, in fact, the land was acquired by defendants on the date of their deed, as may be inferred from its date, the purchase was made before the deed of trust was canceled. If the defendants or their grantors thereafter made payment to Franks, it would not avail as Franks was not authorized to receive payment.

If, notwithstanding the *prima facie* case made by the date of the deed, defendants, in fact, purchased on the date that the deed was recorded, to wit, 15 October, which was the same date that the instrument was canceled of record, the cancellation could not avail unless it be shown that the cancellation was made prior to their purchase, and they relied on the cancellation.

In their brief defendants say: "Rogers sold this land to Welch for a cash consideration and at the time of closing of the transaction the purchase money deed of trust to plaintiffs was satisfied by a marginal entry made by Thomas H. Franks, Trustee, and witnessed by the Assistant Register of Deeds of Henderson County."

The record does not show that the cancellation was made "at the time the transaction was closed." It merely shows that the cancellation

was made on the day the defendants' deed was recorded. Defendants, in their answer, allege: "these defendants relied upon the cancellation entered by the Trustee, in good faith, and after paying the consideration for said property as hereinbefore alleged." They offer no evidence to support this allegation, and the allegation must be read in connection with the next section of the answer: "That all monies paid to the said Thomas H. Franks by these defendants was paid to him in his capacity as a representative of the plaintiffs."

Assume, as defendants contend, that the cancellation was in fact made at the same instant defendants purchased, and their money was delivered to the trustee under the mistaken belief of law that Franks was, because of his position as trustee, authorized to receive payment and cancel the deed of trust, the cancellation could not destroy plaintiff's lien.

*Walker, J.,* in *Wynn v. Grant, supra,* on facts very similar to the facts in the instant case, says: "It is a general and just rule that when a loss has occurred which must fall on one of two innocent persons, it shall be borne by him who occasioned it, even without any moral wrong or positive fault chargeable to him, and more especially so, if there is bad faith or even a lack of due care on his part, which caused the misfortune."

Finally, defendants assert that plaintiffs ratified cancellation by Franks. The record shows that plaintiffs had no knowledge of the cancellation until May 1953. Learning that defendants Welch had purchased property, they immediately went to Welch. Welch informed plaintiffs that they knew of the mortgage and had paid their lawyer to look after that for them. Plaintiffs immediately went to Franks, the trustee. He refused to talk to them. They then employed counsel. Plaintiffs did not institute their suit until about ten months after learning of the cancellation. As to the defendants' suggestion that indulgence had been granted to Franks, plaintiffs testified: "As to informing Mr. Welch that we did not authorize Mr. Franks to cancel the deed of trust, I did not go with any lawyer to Mr. Welch. I don't know of my own knowledge what our lawyer did. We did not agree to let Mr. Franks work this out over a period of time. We were opposed to permitting him to pay $7,100, but we finally accepted the money over six different payments up until October. We did not notify Mr. Welch in person. We though it was our lawyer's business. We did not grant Mr. Franks this indulgence. We did accept these payments, six payments from May until October."

It is said in 2 Am. Jur. 176: "In order that there may be an effective ratification, the principal's act must be accompanied by an intent to ratify the unauthorized transaction, which intention may be shown by facts amounting to an express or implied ratification. As a consequence,

ratification cannot be inferred from acts which may be readily explained without involving any intention to ratify. To illustrate, it was held that there was not an effective ratification where a principal sold cream belonging to him with which other cream had been purchased and commingled, without authority, by his agent; in such case, the sale was to be explained upon the ground that it was necessary in order that a total loss might be prevented."

There is no sufficient evidence in this record to show an intent on the part of plaintiffs to ratify, which would require the submission of an issue to the jury. *Wynn v. Grant, supra; Ritter v. Plumb,* 213 N.W. 571; *Satek v. Fortuna,* 58 N.E. 2d 464; Mechem, Agency (2d Ed.), sec. 439; 2 C.J.S., Agency, sec. 49b.

The sufficiency of the purported cancellation to comply with the statute, G.S. 161-6, does not appear to have been considered on the trial nor was it discussed in the briefs.

The judgment is
Affirmed.

JOHNSON, J., not sitting.