887 F.2d 1079
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re FLETCHER WOODS, INC., Debtor.
Daniel FLEBOTTE, Plaintiff-Appellant,
v
John A. NORTHEN, Trustee, Defendant--Appellee,
and
Allstate Enterprises Mortgage Company; Becky M. Roberts;
Becco Investment Company, Defendants.
In re FLETCHER WOODS, INC., Debtor.
John A. NORTHEN, Trustee, Plaintiff--Appellee,
v.
Becky M. ROBERTS; Becco Investment Company; Defendants-Appellants,
Daniel Flebotte, Defendant,
and
Allstate Enterprises Mortgage Company, Defendant.
 Nos. 88-1535, 88-2854.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 9, 1989.
Decided: Oct. 2, 1989.
 
 Wilfred F. Drake, for appellant Daniel Flebotte
 J. Randolph Ward and G. Jona Poe, Jr.* , for appellants Becky M. Roberts and BECCO Investment Company
 Charles T.L. Anderson (Northern, Blue, Little, Rooks, Thibout & Anderson, on brief), for appellee.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and RICHARD B. KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This litigation arose out of a complaint filed by John A. Northen, trustee in bankruptcy for Fletcher Woods, Inc., in the Bankruptcy Court for the Middle District of North Carolina, seeking to determine the validity and priority among claims to Lot 29, Village Green North, in Durham County, at the time of the filing of the petition in bankruptcy. Daniel L. Flebotte, Becky M. Roberts and BECCO Investment Company, Incorporated (BECCO) and others, responded, alleging they had interest prior to the interest of the bankrupt, and asking that their claims be found valid and enforceable. The trustee in bankruptcy filed a Motion for Summary Judgment. Following argument, the Bankruptcy Judge granted the motion of the trustee in bankruptcy, holding that said trustee acquired title to said Lot 29 free of any and all claims, liens or interest of others and dismissed their claims. Upon appeal, the district court affirmed. We reverse and remand.
 
 
 2
 C. Paul Roberts and some five corporations controlled by him, including Investment Club 76, Inc. and Fletcher Woods, Incorporated, were engaged in developing property into residential lots and constructing residences thereon for sale. One of their subdivisions was known as Village Green North. Some 60 of the lots in Village Green North were conveyed to Fletcher Woods, Inc. Development of the tract followed a pattern whereby Fletcher Woods, Inc. would convey lots to James Linwood Roberts (no relation to C. Paul Roberts) who obtained or provided construction financing. Through apparent error, lot numbered 29 was omitted from the deed. James Linwood Roberts would then contract with Investment Club 76, Inc., a corporation controlled by C. Paul Roberts, to build a residential dwelling on the lot. Upon completion of the construction, James Linwood Roberts would convey the property to Investment Club 76, Inc. which would immediately convey the improved property to a purchaser with permanent financing.[1]
 
 
 3
 Although Lot 29 was omitted from the conveyance by Fletcher Woods, Inc. to James Linwood Roberts, Roberts contracted with Investment Club 76 for the construction of a residential structure on Lot 29 which was completed and ready for sale by August of 1983. On August 1, 1983, James Linwood Roberts attempted to convey Lot 29 to Investment Club 76 by general warranty deed. On that same day, Investment club 76 attempted to convey Lot 29 by general warranty deed to Howard N. Roberts (brother of James Linwood Roberts) who had obtained permanent financing from Allstate Enterprises secured by a $46,400 deed of trust against Lot 29. On September 30, 1983, Howard N. Roberts attempted to convey Lot 29 to Donald and Cheri Allen who intended to use it as their principal residence. The Allens assumed the Allstate deed of trust and executed a second deed of trust on Lot 29 in the amount of $7,900.00 to secure BECCO, a corporation controlled by appellant Becky M. Roberts (ex-wife of debtor C. Paul Roberts, and formerly corporate secretary of Fletcher Woods, Inc. and Investment Club 76, Inc.). On November 26, 1984, the Allens, then in bankruptcy, attempted to convey Lot 29 to Becky M. Roberts who took subject to the Allstate and BECCO deeds of trust. On March 7, 1983, Fletcher Woods, Inc., while record holder of Lot 29, executed a $35,555.02 promissory note payable to Ready Mixed Concrete Co. and secured by a deed of trust on several lots including Lot 29. The deed of trust was filed the same day with the Register of Deeds for Durham County, North Carolina. Appellant Daniel R. Flebotte purchased the note secured by the deed of trust in December 1983 for the amount then due, $13,552.00, and became a holder in due course. Flebotte never recorded a notice of assignment or a substitution of trustee on the deed of trust, but retained the original note and deed of trust in his possession.
 
 
 4
 C. Paul Roberts, and five corporations controlled by Roberts, including Investment Club 76, Inc. and Fletcher Woods, Inc., filed voluntary Chapter 7 petitions on June 28, 1985. After the trustee commenced this action on September 17, 1986, and after receiving service of the summons and complaint, Ready Mixed Concrete Company asked the trustee on the deed of trust, Perry Safran, to cancel it. Mr. Safran gave a colleague, Lee Ann Tanner, power of attorney, and she cancelled the deed of trust on October 13, 1986. Upon learning of the cancellation, Flebotte asked Safran to re-record the deed of trust which was done by Tanner on November 3, 1986. Before re-recording the deed of trust, Tanner noted on the documents that the earlier cancellation was a mistake and that the note secured by the deed had not been satisfied. There is no dispute that the cancellation and re-recording took place during the automatic stay.
 
 Flebotte's Claim
 
 5
 The sole issue for determination regarding Flebotte's claim is the effect to be given the erroneous post-petition cancellation of the deed of trust on September 17, 1986. Flebotte purchased for a valuable consideration the promissory note secured by a deed of trust on Lot 29 from Ready Mixed Concrete Co. Ready Mixed remained the named holder of record on June 28, 1985, the day debtor's Chapter 7 petition was filed. The trustee does not contend that the note has been satisfied, but instead seeks to avoid the deed of trust on the ground that its cancellation terminated Flebotte's secured status and the attempted re-recordation was ineffective because it violated the automatic stay, 11 U.S.C. Sec. 361(a)(4).[2] The trustee recognizes the harshness of this result, but suggests that Flebotte could have protected himself by recording notice of the assignment.
 
 
 6
 First, Flebotte responds that his status as a secured creditor and a bona fide holder in due course of the deed of trust was fixed at the time debtor filed its petition. See In re Chaseley's Foods, Inc., 726 F.2d 303 (7th Cir.1983). Second, he contends that North Carolina law, as a matter of equity, allows the re-recordation of mistakenly cancelled deeds of trust where those seeking to avoid the lien cannot show detrimental reliance on the cancellation. See Montieth v. Welch, 244 N.C. 415, 94 S.E.2d 345 (1956).
 
 
 7
 While the "strong-arm" provision of 11 U.S.C. Sec. 544(a) gives the trustee certain lien avoidance powers "as of the commencement of the case", the language of that provision does not specifically address the present situation where a lien, valid as of the commencement of the case, is said subsequently to become unsecured. Nevertheless, courts interpreting Sec. 544(a) and its predecessor under the former Bankruptcy Act have held that lien rights of creditors are fixed under bankruptcy law as of the date the petition is filed. See In re Paul, 67 B.R. 342, 346 (Bkrtcy.D.Mass.1986); In re Bond Enterprises, Inc., 54 B.R. 366, 369 (Bkrtcy.D.N.M.1985).; In re Catamount Dyers, Inc., 50 B.R. 788, 790 (Bkrtcy.D.Vt.1986); In re Chaseley's Foods, Inc., 30 B.R. 452, 455 (Bkrtcy.N.D.Ind.1983) aff'd., 726 F.2d 303 (7th Cir.1983). See also Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 661 (2nd Cir.1940) (interpreting Secs. 110 and 70(c) of the former Bankruptcy Act).
 
 
 8
 The question arises most frequently where a properly filed financing statement perfecting a security interest in debtor's property in accordance with Sec. 9-403 of the U.C.C. expires during the pendency of the case. In these cases, the trustee argues that the security interest lapses due to the creditor's failure to obtain relief from the stay in order to file a continuation statement.[3] After reviewing the purpose of the filing requirement, the majority of courts faced with these facts have rejected the trustees' argument. The Court in Chaseley's Food pointed out that:
 
 
 9
 [T]he "notice" purpose of the continuation statement is not served once a bankruptcy petition is filed. The only parties which can possibly be injured by failure to file a continuation statement once a bankruptcy proceeding is pending are creditors who obtain their liens after the financing statement expires. However, because the trustee takes possession of the debtor's property once a petition is filed, and this possession is open and notorious, these creditors should not need the protection of a continuation statement.
 
 
 10
 Chaseley's Foods, 30 B.R. at 455. See also In re Paul, 67 B.R. 342 (Bkrtcy.D.Mass.1986); In re Enterprises, Inc., 54 B.R. 366 (Bkrtcy.D.N.M.1985); In re Catamount Dyers, Inc., 50 B.R. 788 (Bkrtcy.D.Vt.1985).
 
 
 11
 The district court distinguished Chaseley from the present case on several grounds:
 
 
 12
 First, Mr. Flebotte lost his secured status because of a mistaken cancellation of the deed of trust. Thus, he lost his position because of an affirmative act taken by the former holder of the deed, not the failure to file a continuing finance statement. Second, Chaseley involved security for money lent for inventory. Finally, the Uniform Commercial Code controlled the [creditor's] secured status.
 
 
 13
 Order on Appellant's Motion for Reconsideration.
 
 
 14
 While these differences do exist, the reasoning of Chaseley and other cases dealing with expired financing statements remains helpful to the present analysis. These cases have found that the automatic stay has a twofold purpose. It not only fixes the rights and priorities of creditors as of the time the petition is filed and prohibits further acts to advance those rights and priorities, it also protects those rights and priorities. This second purpose of protecting rights and priorities was recognized by the Supreme Court in Isaacs v. Hobbs Tire and Timber Co., 282 U.S. 734, 738, 51 S.Ct. 270, 272 (1931), wherein the Court stated: "valid liens existing at the time of commencement of a bankruptcy proceeding are preserved...." Relying on this language, the Second Circuit held that because "in general no creditors' liens acquire validity after filing of the petition.... It should equally follow, we believe, that liens good at this time do not lose their validity as against the trustee; unless the statute so expressly provides." Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 661 (2nd Cir.1958). See also In re Paul, 67 B.R. 342, 345 (Bkrtcy.D.Mass.1986). While it is true, as the district court noted, that mistaken action rather than inaction resulted in cancellation of the deed of trust, recognition of Flebotte's secured status will not offend and is entirely consistent with the purpose of protecting security interests valid at the time of filing. Too, it is consistent with the bankruptcy court's role as a court of equity.
 
 
 15
 North Carolina law does not command or counsel a different result. In Montieth v. Welch, 244 N.C. 415, 94 S.E.2d 345 (1956), the North Carolina Supreme Court refused to give effect to a trustee's unauthorized cancellation of a deed of trust. In reaching its decision, the Court found significant the fact that the cancellation occurred after defendants had purchased the property and that therefore they could not have relied on its validity. In the present case, there is no evidence that anyone relied on the erroneous cancellation to their detriment. The fact is, that Fletcher Woods, Inc. was paid the purchase price for Lot 29, and the cancellation was not authorized by Flebotte, the holder of the deed of trust. The case is REMANDED with direction to enter judgment for Flebotte for the amount of his claim with interest.
 
 Roberts' Claim
 
 16
 Becky Roberts alleges that she paid in excess of $4,300.00 in payments and penalties due on the Allstate deed of trust and that since November 26, 1983, she has incurred expenses in excess of rents received totaling some $11,776.29 for items directly benefitting the property. She seeks the imposition of a lien for this amount against Lot 29. Becky Roberts, as successor under color or title to James Linwood Roberts who constructed a house on the lot, also seeks the imposition of a lien for betterments against Lot 29 for an amount not less than $59,500.00 representing the value of the improvements less the fair rental value of the unimproved land. Roberts recognizes that her betterments lien would be subject to any valid prior mortgage.
 
 
 17
 The basis of Roberts' claim for the imposition of an equitable lien for betterments on Lot 29 is the authority of N.C.G.S. Sec. 1-340, et seq. Alternatively, Roberts seeks the imposition of a constructive trust on the property or the proceeds from its sale on the theory of unjust enrichment.
 
 
 18
 The Betterments statute provides in pertinent part:
 
 
 19
 A defendant against whom a judgment is rendered for land may, at any time before execution, present a petition to the court rendering the judgment, stating that he, or those under whom he claims, while holding the premises under a color of title believed to be good, have made permanent improvements thereon, and praying that he may be allowed for the improvements, over and above the value of the use and occupation of the land. The court may, if satisfied of the probable truth of the allegation, suspend the execution of the judgment and impanel a jury to assess the damages of the plaintiff and the allowance to the defendant for the improvements. In any such action this inquiry and assessment may be made upon the trial of the cause. N.C.G.S. Sec. 1-340.
 
 
 20
 To be entitled to compensation for betterments under this section, defendant must show that she, or those under whom she claims, (1) made permanent improvements on the property; (2) under a bona fide and reasonable belief of good title when the improvements were made. Pamlico County v. Davis, 249 N.C. 648, 107 S.E.2d 306 (1959); Beacon Homes, Inc. v. Holt, 266 N.C. 467, 146 S.E.2d 434 (1966). See also Hackett v. Hackett, 31 N.C.App. 217, 228 S.E.2d 758, cert. denied, 291 N.C. 448230 S.E.2d 765 (1976).
 
 
 21
 In affirming the entry of summary judgment by the bankruptcy court, the district court said that the betterments claim could not be asserted until the trustee brings a separate suit for ejectment. In reaching its conclusion that appellant's betterments claim was premature, the court relied on Beacon Homes, Inc. v. Holt, 266 N.C. 467, 146 S.E.2d 434 (1966). However, we do not read that case or the case cited therein of Board of Comm'rs of Roxboro v. Bumpass, 237 N.C. 143, 74 S.E.2d 436 (1905) as imposing such a requirement under the present circumstances. Those cases make clear that a claim for betterments under the statute is a defensive claim. Roberts has raised her claim for betterments defensively as required by the statute.
 
 
 22
 The trustee in bankruptcy argues that he may avoid even a valid betterments lien in his status as a bona fide purchaser of Lot 29 or as a perfected judgment lien creditor under 11 U.S.C. Sec. 544(a). However, the trustee's avoidance powers under Sec. 544(a) must be read in conjunction with Sec. 541(d) which provides that: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." (Underscoring added). See SENATE REPORT No. 95-989, 95th Cong.2d Sess. (1978), 82 U.S. Code Cong. & Admin. News p. 6324. Section 541 and cases interpreting Sec. 541 make clear that the bankruptcy estate's legal and equitable interests in property rise no higher than those of the debtor. See In re FCX, Inc., 853 F.2d 1149, 1153 (4th Cir.1988); see also Creasy v. Coleman Furniture Corp., 763 F.2d 656, 662 (4th Cir.1985).
 
 
 23
 The issues of betterments, and whether Becky Roberts is entitled to a claim therefore as a claimant under another, the priorities of liens, her claims for funds advanced for protection of the property, are matters which should be determined by the evidence and not by summary judgment.
 
 
 24
 This matter is therefore remanded to the district court to be returned to the bankruptcy court for entry of a judgment in favor of Donald L. Flebotte, and to determine whether appellant Becky M. Roberts, or BECCO, is entitled to reimbursement for sums allegedly paid on the Allstate deed of trust and other expenses incurred and whether she has a valid betterments claim, specifically whether her predecessor in interest, James Linwood Roberts, had a valid claim for betterment. On remand, the district court should also consider whether or not Becky Roberts is entitled to enforce her unust enrichment claim. See Clontz v. Clontz, 44 N.C.App. 573, 261 S.E.2d 695 (1980).
 
 
 25
 REMANDED.
 
 
 
 *
 Following submission of briefs and oral argument, but before decision, J. Randolph Ward withdrew as counsel of record, and G. Jona Poe, Jr. was substituted as counsel of record for Appellants Becky Roberts and BECCO Investment Company
 
 
 [1]
 The conveyance from James Linwood Roberts to Investment Club 76 was apparently done so that the builder, rather than Roberts, would sign the mechanics and materialmen lien waivers when the property was sold to a final purchaser
 
 
 [2]
 However, the attempted cancellation of the deed of trust occurred during the period of the stay
 
 
 [3]
 This problem cannot arise in North Carolina and other states which have adopted the 1972 version of Sec. 9-403 of the U.C.C. which recognizes the financing statements may expire during the pendency of bankruptcy proceedings and provides that a perfected security interest will not lapse, but will remain effective throughout the bankruptcy proceedings and for a period of 60 days thereafter