46 F.3d 1126
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
C. Dupree SMITH; Mae L. SMITH, Plaintiffs-Appellants,
v.
The UNITED CAROLINA BANK, Defendant-Appellee,
and
Edward Louis LATTA, Debtor; Elizabeth Gregory LATTA,
Debtor; Charles K. WOODS, Substitute Trustee; Judith M.
HAUSER, a natural person; Howard PERRY and Walston Realty,
Incorporated, a North Carolina corporation; Shelia R.
Davis, a natural person; Elizabeth Gregory LATTA, d/b/a
Through the Looking Glass, a sole proprietorship; Richard
M. HUTSON, III, Standing Trustee, Defendants.
 No. 94-1954.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 8, 1994.
Decided: January 13, 1995.
 
 ARGUED: Charles Gordon Brown, BROWN & BUNCH, Chapel Hill, NC, for Appellants. Richard Dewitte Sparkman, RICHARD D. SPARKMAN & ASSOCIATES, P.A., Angier, NC, for Appellee. ON BRIEF: Scott D. Zimmerman, BROWN & BUNCH, Chapel Hill, NC, for Appellants.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and
 OPINION
 WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants C. Dupree and Mae L. Smith, husband and wife, appeal from the district court's partial affirmance of the bankruptcy court's grant of summary judgment. We affirm.
 
 
 2
 * On May 20, 1988, the Smiths sold a commercial property located at 110 S. Churton Street in Hillsborough, North Carolina, to Edward L. Latta. The purchase price was $90,000. Latta paid $5,500 cash; he and his wife borrowed the balance of the purchase money. They obtained $50,000 from Hillsborough Savings & Loan Association ("Hillsborough S & L") and $35,000 from the Smiths. As collateral for these loans, Hillsborough S & L received a first lien on the Churton Street property and the Smiths received a second lien. Both liens were properly recorded. J. Matthew Martin, a Hillsborough lawyer, handled the closing and was named as trustee on both deeds of trust.
 
 
 3
 Three days after the sale of the Churton Street property, the Smiths lent the Lattas an additional $20,000 to make improvements to the property. The additional funds were secured by a new $55,000 deed of trust prepared by Martin, and naming him as trustee. This document was intended to replace the original $35,000 deed of trust. To that end, when the Lattas executed the $55,000 deed of trust, the Smiths marked the $35,000 document "paid in full." When Martin recorded the $55,000 deed of trust, however, he erroneously failed to cancel the $35,000 lien.
 
 
 4
 In early 1990, the Lattas began to borrow money from Appellee United Carolina Bank ("UCB" or "the Bank") to make further improvements to the Churton Street property. Initially, the Bank extended funds in a series of relatively small transactions. Some of these loans were unsecured. In April and May 1990, UCB and the Lattas discussed a large loan that would consolidate all existing UCB loans, provide some fresh capital, and give the Bank adequate security. A condition of the loan was that UCB would have a first lien on the Churton Street property.
 
 
 5
 In anticipation of the consolidation loan, Mrs. Latta, an experienced title searcher, reviewed the land records and discovered that Martin had neglected to cancel the $35,000 deed of trust in favor of the Smiths. She left him a message reminding him that the $35,000 note had been paid. After first obtaining an affidavit from the Smiths confirming satisfaction of the $35,000 debt, Martin cancelled the $35,000 deed of trust on their behalf. This cancellation occurred on April 27, 1990. At that time, Martin properly took no action to cancel the Smiths' $55,000 deed of trust.
 
 
 6
 On June 1, 1990, UCB issued a commitment to the Lattas to provide a consolidation loan in the amount of $245,433. The commitment letter required the Lattas to provide a first lien on the Churton Street property as collateral. Robert A. Hassell, a Hillsborough attorney, was retained as closing attorney. Hassell, who was not familiar with title work, hired Barbara J. Baker, another lawyer, for that purpose. Baker, in turn, engaged Donna M. Ragan, a paralegal, as an independent contractor to perform the title work so that Baker could render a title opinion.
 
 
 7
 When she reviewed the relevant documents, Ragan discovered the $55,000 deed of trust in favor of the Smiths. She discussed this discovery with Mrs. Latta; there is a factual dispute about the substance of that conversation.[1] After the conversation, Ragan called Martin and notified him that she believed the $55,000 lien should be cancelled. Martin then called Hassell, who, having spoken to Ragan, allegedly stated his understanding that the lien should be cancelled.
 
 
 8
 On June 7, 1990, without consulting the Smiths, Martin cancelled the $55,000 deed of trust. This cancellation was unauthorized and improper, as the Lattas had not yet satisfied their debt to the Smiths. Martin wrote a letter to Hassell (with a copy to the Lattas) confirming the cancellation "as per" Hassell's instructions. He did not, however, inform the Smiths that he had cancelled their lien.
 
 
 9
 After Martin cancelled the Smiths' lien, UCB and the Lattas closed the $245,433 loan. The Lattas used some of the loan proceeds to pay off the Hillsborough S & L note. As a result, UCB received what it thought was a first lien on the Churton Street property.
 
 
 10
 On September 26, 1991, the Lattas filed for relief under Chapter 13 of the Bankruptcy Code. They listed the Smiths' debt as unsecured. The Smiths were unaware that their lien had been cancelled until after the bankruptcy petition was filed.[2] They filed an adversary proceeding in the bankruptcy court seeking a ruling that they were secured creditors and a determination of priority vis a vis UCB.[3]
 
 
 11
 The bankruptcy court granted summary judgment against the Smiths, holding that they were unsecured creditors. The court rea soned that the trustee properly avoided the Smiths' lien pursuant to 11 U.S.C. Sec. 544. The Smiths then appealed to the district court, which affirmed in part and reversed in part. The court held that the Smiths were secured creditors, but that their rights were subordinate to those of UCB. This appeal followed.
 
 II
 
 12
 Summary judgment should be entered, in adversary bankruptcy proceedings, if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Bankr.R. 7056; Fed.R.Civ.P. 56. We review the lower court's grant of summary judgment de novo, viewing any reasonable inferences in the light most favorable to the non-moving party. See Roe v. Doe, 28 F.3d 404, 406-07 (4th Cir.1994).
 
 
 13
 In this appeal, the Bank does not seek review of the district court's ruling that the Smiths are secured creditors. The sole question before us is whether the lower court properly concluded that the Bank is entitled to priority vis a vis the Smiths. This question is governed by the law of North Carolina. See Butner v. United States, 440 U.S. 48 (1979); W. Norton, Norton Bankruptcy Law & Practice 2d Sec. 4.33, at 4-210 (1994).
 
 
 14
 A 1956 decision of the North Carolina Supreme Court, Monteith v. Welch, 244 N.C. 415, 94 S.E.2d 345, indicates that the Bank, whose position is analogous to that of a subsequent innocent purchaser, is entitled to priority in this case. In Monteith, Mr. and Mrs. Monteith were the beneficiaries of a properly recorded deed of trust. Thomas Franks was named as trustee. Id. at 416, 94 S.E.2d at 346. After several years, the underlying property was sold to Mr. and Mrs. Welch. Id. At the time of the sale, the Monteiths' deed of trust had not been cancelled. The Welches were aware of the outstanding lien; at closing, they gave Franks money with the understanding that he would pay the Monteiths and cancel their deed of trust. Id. at 419-20, 94 S.E.2d at 349-50. Franks failed to carry out this plan. He cancelled the Monteiths' deed of trust, but apparently pocketed the money. The Monteiths then sued to re-establish their security interest.
 
 
 15
 The North Carolina Supreme Court affirmed a jury verdict in favor of the Monteiths. The court rejected the Welches' argument that they were entitled to rely on Franks's cancellation of the lien. Id. at 420-21, 94 S.E.2d at 349-50. Crucial to the court's decision was the fact that the cancellation had not yet occurred at the time the Welches bought the property. Indeed, Franks did not cancel the deed of trust until eight days after the property was conveyed to the Welches. Id. at 419, 94 S.E.2d at 349. The court reasoned that the Welches thus had notice of the Monteiths' senior lien and did not qualify as subsequent innocent purchasers. Id. at 420-21, 94 S.E.2d at 349-50.
 
 
 16
 In the course of its discussion, the court noted that the Welches could have relied on Franks's cancellation if the cancellation occurred
 
 
 17
 before they purchased [the property] and [if] in fact [they] purchased [the property] relying on [the cancellation's] validity. The burden of establishing that they purchased without notice of the unauthorized cancellation was on [the Welches].
 
 
 18
 Id. at 420, 94 S.E.2d at 349. From this passage, we discern the following rule of North Carolina law: a subsequent lien creditor with a properly recorded deed of trust enjoys priority, despite the unauthorized cancellation of a prior deed of trust, if the subsequent creditor obtains its deed of trust after the cancellation has occurred, in reliance on the cancellation's validity, and without knowledge that the cancellation was unauthorized.[4]
 
 
 19
 Here, there is no dispute that the consolidation loan closed after Martin cancelled the Smiths' $55,000 lien. Moreover, it is undisputed that the Bank relied on the effectiveness of the cancellation of the Smiths' lien. Indeed, a condition of the loan commitment issued to the Lattas was that UCB would be the first lienholder on the Churton Street property. Finally, there are no facts in the record indicating that UCB knew the discharge was unauthorized.
 
 
 20
 The Smiths rely heavily on the fact that Hassell, who they claim was acting as UCB's agent in connection with the consolidation loan, instructed Martin to cancel the lien. They characterize this instruction as a "misrepresentation" and claim that it"induced" Martin to discharge their security interest. They maintain that the Bank should be penalized for its agent's misconduct. Assuming for purposes of discussion that Hassell was in fact the agent of UCB, we find the Smiths' argument unpersuasive.
 
 
 21
 We recognize that the Smiths are entirely blameless here. Nevertheless, under Monteith, they cannot shift the responsibility for Martin's mistake onto UCB unless the Bank did not rely in good faith on the validity of Martin's cancellation. Here, all of the facts point toward good-faith reliance on the part of the Bank. Because Hassell did not know the cancellation was unauthorized, he cannot be said to have made any "misrepresentation." Moreover, it blinks at reality to say that Hassell "induced" Martin to cancel the Smiths' lien. Hassell obviously had no power to authorize the cancellation; only the Smiths could do so. Indeed, Martin's own conduct in cancelling the $35,000 deed of trust indicates that he knew the Smiths' prior approval was required before their deed of trust could be properly cancelled.[5]
 
 
 22
 In sum, we believe this case falls squarely within the rule established in Monteith. Accordingly, the Bank is entitled to priority over the Smiths.
 
 III
 
 23
 For the reasons stated, the judgment of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 At her deposition, Ragan suggested that Mrs. Latta told her that the wrong deed of trust had been cancelled and that the $55,000 lien was paid off and should be discharged. Mrs. Latta denies making such a representation. She claims to have been confused by an abortive attempt to subordinate the Smiths' lien to that of UCB
 
 
 [2]
 After the consolidation loan closed, the Lattas continued to make regular loan payments to the Smiths
 
 
 [3]
 The Smiths also filed a state-court action against Martin. They have been awarded summary judgment in that case; Martin has taken an appeal
 
 
 [4]
 Other North Carolina authority is arguably inconsistent with this rule. See Union Cent. Life Ins. Co. v. Cates, 193 N.C. 456, 137 S.E. 324 (1927) (party aggrieved by unauthorized cancellation is entitled to priority unless it was negligent); First Fin. Sav. Bank v. Sledge, 415 S.E.2d 206 (N.C.App.1992) (same); see also Annotation, 35 A.L.R.2d 948 (1954). Despite these authorities, we believe Monteith, as the state supreme court's most recent pronouncement on the issue presented here, is controlling
 
 
 [5]
 For the same reasons, we reject the Smiths' contention that, in light of Hassell's comments, the Bank should be equitably estopped from claiming actual reliance on the cancellation. See Peek v. Wachovia Bank & Trust Co., 242 N.C. 1, 11-12, 86 S.E.2d 745, 753 (1955) (discussing equitable estoppel)