**HOUSEHOLD REALTY CORP. v. LAMBETH**

[188 N.C. App. 545 (2008)]

HOUSEHOLD REALTY CORPORATION and HSBC MORTGAGE SERVICES INC., Plaintiffs v. JOYCE EARL DELANCY LAMBETH a/k/a J.E.D. LAMBETH, individu- ally; D. SCOTT HEINEMAN and KURT F. JOHNSON, individually and as Trustees of the "Lambeth Family Trust," and FREMONT INVESTMENT & LOAN, Defendants

No. COA07-362

(Filed 5 February 2008)

1. **Mortgages and Deeds of Trust— priorities—fraudulent cancellation**

   In an action to determine the priority between two lenders arising from a fraudulent mortgage elimination scheme, the trial court correctly determined that the deed of trust from the first lender, which was cancelled by an unauthorized act, was entitled to priority over a subsequent deed of trust from an innocent third party. The case is controlled by *Union Central Life Insurance Co. v. Cates*, 193 N.C. 456 (1927), rather than *Monteith v. Welch*, 244 N.C. 415 (1956).

2. **Mortgages and Deeds of Trust— fraudulent cancellation— failure to respond to Administrative Demand**

   The failure of a lender (Household) to respond to an "Administrative Demand" by the perpetrator of a fraudulent mort- gage cancellation did not preclude Household from having its deed of trust reinstated as the superior lien. It would not have occurred to anyone of ordinary business judgment and pru- dence to make any inquiry into the information contained in the 38-page Administrative Demand, which was bizarre, confusing, and absurd.

Appeal by Defendant Fremont Investment & Loan from judg- ment entered 11 September 2006 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 17 October 2007.

*Katten Muchin Rosenman LLP, by Jeffrey C. Grady, Bradley E. Pearce, and Richard L. Farley, for Plaintiffs-Appellees.*

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell and Christopher C. Finan, for Defendant-Appellant.*

STEPHENS, Judge.

This matter arises out of a fraudulent mortgage elimination scheme participated in by defendant Joyce Earl Delancy Lambeth ("Lambeth") and orchestrated by defendants Kurt F. Johnson and D. Scott Heineman, the principals of the Dorean Group. This scheme operated to fraudulently remove valid deeds of trust and mortgages given to lenders as security for residential loans. The fraudulent mortgage elimination scheme ultimately victimized both appellant Fremont Investment & Loan ("Fremont") and appellees Household Realty Corporation and HSBC Mortgage Services, Inc. (collectively, "Household").

The sole matter before this Court on this appeal involves a priority dispute between Household and Fremont in connection with deeds of trust in favor of Household and Fremont that were negatively affected by the fraudulent mortgage elimination scheme.

## I. FACTS

Lambeth acquired real property located at 3914 Berkshire Drive, Browns Summit, North Carolina 27214 ("Lambeth Property") by Special Warranty Deed dated 23 September 1997, and recorded on 3 October 1997 in the Guilford County Register of Deeds. On or about 18 February 2000, Lambeth executed and delivered to mortgage lender Axiom Financial Services an adjustable rate note for the principal amount of $400,000.00, and a deed of trust, pledging the Lambeth Property to secure Lambeth's obligations under the note. The deed of trust was duly recorded with the Guilford County Register of Deeds on 29 February 2000.

During 2000, Axiom assigned and transferred to Household the note ("Household Note") and the deed of trust ("Household Deed of Trust"). In connection with the transfer and assignment, two assignments of Deed of Trust were recorded with the Guilford County Register of Deeds.

## A. FACTS RELATED TO THE FRAUDULENT CANCELLATION

On or about 24 March 2004, Lambeth recorded a quitclaim deed with the Guilford County Register of Deeds. This deed purported to transfer all of Lambeth's rights and interest in the Lambeth Property to defendants Heineman and Johnson, as Trustees of the "Lambeth Family Trust." The transfer was made without notice to or the consent of Household.

On or about 23 April 2004, Heineman and Johnson, as the purported Trustees of the Lambeth Family Trust, mailed Household 38 pages of documents purporting to be part of a "Private International Remedy Demand Number HMS-042304-JEDL" ("Administrative Demand"). The Administrative Demand purported to, among other things, create a self-executing agreement whereby Household automatically appointed Heineman as "attorney-in-fact" for Household, and authorized Heineman and Johnson to prepare and record all necessary documents for "proper reconveyance" of the Lambeth Property if Household, within 10 days, did not rebut "point for point" a so-called "Affidavit of Truth" contained therein. Household did not respond to the Administrative Demand.

On or about 3 August 2004, the Dorean Group fraudulently cancelled the Household Deed of Trust by recording fraudulent documents with the Guilford County Register of Deeds. First, without Household's authorization, the Dorean Group recorded a document captioned "Substitution of Trustee," representing that Heineman was the "attorney-in-fact" for Household Mortgage Services, and further purporting to substitute Lambeth as Trustee under the Household Deed of Trust. Immediately thereafter, the Dorean Group fraudulently recorded a so-called "Full Reconveyance" wherein Heineman, as the purported Trustee for Household under the Household Deed of Trust, represented that (i) all sums secured by the Household Deed of Trust had been paid, and (ii) the Household Deed of Trust and the Household Note had been surrendered to the Trustee for cancellation. Both statements were false. The Full Reconveyance also purported to reconvey the estate to the Lambeth Family Trust. The Substitution of Trustee and the Full Reconveyance are hereinafter referred to as the "Unauthorized Cancellation."

B.  FACTS RELATING TO THE FREMONT LOAN

On 22 October 2004, four days prior to the date Household learned of the Unauthorized Cancellation, Lambeth obtained a new loan from Fremont, executing a promissory note in the amount of $367,000.00 payable to Fremont ("Fremont Note") and executing a deed of trust in favor of Fremont ("Fremont Deed of Trust"), pledging the Lambeth Property as security for the Fremont Note.

For reasons which do not appear of record, the Fremont Deed of Trust was not recorded in the records of the Guilford County Register of Deeds until 28 January 2005. Fremont purportedly relied on an examination of the records of the Guilford County Register of Deeds,

up to and including 12 September 2004, to determine that the Lambeth Property was unencumbered at the time Lambeth executed the Fremont Deed of Trust on 22 October 2004. The Unauthorized Cancellation was included in the documents upon which Fremont relied.

## C. FACTS RELATING TO THE PRIORITY DISPUTE ON APPEAL

By Order and Judgment entered 28 August 2006, the General Court of Justice, Superior Court Division for Guilford County, held that the Household Deed of Trust was fraudulently cancelled and should be reinstated as a lien on the Lambeth Property.[1] The summary judgment was not appealed. The Judgment and Order did not specify a reinstatement date of the Household Deed of Trust and, therefore, left the priority issue between the Household Deed of Trust and the Fremont Deed of Trust to be determined at a subsequent hearing.

On 28 August 2006, the Honorable Stuart Albright presided over the bench trial between Household and Fremont. On 11 September 2006, Judge Albright entered Judgment in favor of Household, restoring the Household Deed of Trust as a lien upon the Lambeth Property, effective from its original recordation date of 29 February 2000. As between the Household Deed of Trust and the Fremont Deed of Trust, the trial court held the Household Deed of Trust to be a "first-in-time superior lien" against the Lambeth Property. Fremont appeals this Judgment. We affirm.

## II. DISCUSSION

[1] Fremont first contends the trial court erred in applying the rule of law discussed in *First Fin. Savings Bank, Inc. v. Sledge*, 106 N.C. App. 87, 415 S.E.2d 206 (1992), in determining that the Household Deed of Trust was entitled to priority over the Fremont Deed of Trust. Fremont argues the trial court should have relied on *Monteith v. Welch*, 244 N.C. 415, 94 S.E.2d 345 (1956), instead, to reach a ruling in favor of Fremont. We disagree for the following reasons:

The Monteiths were the beneficiaries of a properly recorded deed of trust for which Thomas Franks was named as trustee. After several years, the underlying property was sold to the Welches. At the time of the sale, the Monteiths' deed of trust had not been cancelled. The

---

1. The court also granted summary judgment in favor of Household Realty Corporation and against Lambeth.in the sum of $486,177.66, with interest thereon, representing the outstanding principal and interest on the Household Note.

**HOUSEHOLD REALTY CORP. v. LAMBETH**

[188 N.C. App. 545 (2008)]

Welches, aware of the outstanding lien, gave Franks money at closing to pay the Monteiths to cancel their deed of trust. Although Franks cancelled the Monteiths' deed of trust eight days later, he never paid the Monteiths. The Monteiths then sued to re-establish their security interest. *Monteith*, 244 N.C. 415, 94 S.E.2d 345.

The North Carolina Supreme Court rejected the Welches' argument that they were entitled to rely on Franks' cancellation of the lien. The Court held that since the Welches had notice of the Monteiths' senior lien, they did not qualify as subsequent innocent purchasers. In the course of its discussion, the Court noted that "[t]he cancellation made by Franks could not, in any event, protect [the Welches] unless it was made before they purchased and in fact purchased relying on its validity." *Id.* at 420, 94 S.E.2d at 349.

Subsequently, in *Smith v. United Carolina Bank*, 1995 U.S. App. LEXIS 696 (4th Cir. Jan. 13, 1995), the Fourth Circuit, in an unpublished opinion referencing the *Monteith* quote above, stated:

From this passage, we discern the following rule of North Carolina law: a subsequent lien creditor with a properly recorded deed of trust enjoys priority, despite the unauthorized cancellation of a prior deed of trust, if the subsequent creditor obtains its deed of trust after the cancellation has occurred, in reliance on the cancellation's validity, and without knowledge that the cancellation was unauthorized.

*Id.* at *9. This "passage," however, was plainly *obiter dictum*, and does not constitute the Court's holding in *Monteith*. Furthermore, any purported rule of law that the Fourth Circuit formulated in an unpublished opinion based on that *dictum* is not controlling on this Court.

Here, the trial court correctly determined that the law stated by our Supreme Court in *Union Cent. Life Ins. Co. v. Cates*, 193 N.C. 456, 137 S.E. 324 (1927), and followed in *First Financial*, is the longstanding rule in North Carolina, and thus controls the resolution of this case.

As between a mortgagee, whose mortgage has been discharged of record solely through the act of a third person, whose act was unauthorized by the mortgagee, and for which he is in no way responsible, and a person who has been induced by such cancellation to believe that the mortgage has been canceled in good faith . . . the equities are balanced, and the lien of the prior mortgage, being first in order of time, is superior.

*Union Central,* 193 N.C. at 462, 137 S.E. at 327 (quotation marks and citations omitted).

In *First Financial,* Mr. and Mrs. Sledge executed a promissory note secured by a deed of trust to Henry A. Boyd, trustee, and First Financial Savings Bank, Inc. The deed of trust was recorded and secured First Financial's lien on real estate lots 28, 29, 31, 34, and 35. Subsequently, Mr. Sledge requested a release deed for lot 31 and agreed to pay First Financial a release fee. After receiving the fee, First Financial gave Mr. Sledge the unrecorded deed releasing lot 31. Without the knowledge or authorization of First Financial, Mr. Sledge altered the release deed to include lots 28, 29, and 34. He then recorded the deed for the release of lots 28, 29, 31, and 34. *First Financial,* 106 N.C. App. 87, 415 S.E.2d 206.

The Sledges later sold lot 34 to the Walkers. The deed for the sale of lot 34 was recorded, and the Walkers subsequently executed a deed of trust on that lot in favor of the State Employees' Credit Union. After discovering the release deed had been materially altered, First Financial brought an action to set aside the release deed as it pertained to lots 28, 29, and 34. The trial court granted summary judgment in favor of First Financial, and this Court affirmed. *Id.* Citing *Union Central,* this Court stated: "The law in this State is clear regarding material alterations of written instruments. The discharge of a perfected mortgage upon public record by the act of an unauthorized third party entitles the mortgagee to restoration of its status as a priority lienholder over an innocent purchaser for value." *First Financial,* 106 N.C. App. at 88, 415 S.E.2d at 207.

The law as enunciated in *Union Central,* and followed in *First Financial,* is the rule in North Carolina, and *Monteith* did not overturn it. Accordingly, the trial court correctly applied the law of North Carolina to the facts in this case and correctly determined that the Household Deed of Trust, which had been cancelled of record by the unauthorized act of the Dorean Group, was entitled to priority over the Fremont Deed of Trust, such deed of trust, and the underlying loan, having been made and given by Fremont in reliance upon the presumed validity of the record cancellation of the Household Deed of Trust. Fremont's assignment of error is overruled.

[2] Fremont next contends that Household's failure to respond to the Administrative Demand should preclude Household from having its Deed of Trust reinstated as the superior lien. We disagree.

The discharge of a perfected mortgage upon public record by the act of an unauthorized third party entitles the mortgagee to restoration of its status as a priority lienholder over an innocent purchaser for value. *Union Central Life Insurance Co. v. Cates*, 193 N.C. 456, 462, 137 S.E. 324, 327 (1927). The owner of a mortgage, however, will lose priority over an innocent purchaser if the mortgagee is negligent with respect to the release of the mortgage. *Id.*

*First Financial*, 106 N.C. App. at 88, 415 S.E.2d at 207-08.

In its judgment, the trial court made the following finding of fact:

9. Household did not reply to the Administrative Demand and filed no document on the public record with respect to the [Lambeth] Property prior to the Unauthorized Cancellation, even though Defendant Lambeth stopped paying on the Note in May 2004; however, the existence of the mortgage elimination scheme was not well known to mortgage companies such as Household and Fremont at the time and the Court does not find that Household's failure to take affirmative action was unreasonable or breached any duty Household owed to Fremont.

The trial court also made the following conclusion of law:

7. The Court, having found that Household was not negligent in its handling of the Administrative Demand and the Unauthorized Cancellation, concludes that Household did not breach any duty it owed that caused injury to Fremont.

Fremont contends that the trial court, in reaching the quoted finding and conclusion, improperly applied a tort law negligence standard to determine that Household was not at fault for the Unauthorized Cancellation of its lien. Fremont argues that the rule in *Union Central* instead requires a "balancing of the equities" in determining whether an instrument wrongfully cancelled is entitled to priority over subsequent innocent purchasers once the cancelled instrument is restored as a lien. Fremont further contends that, when balancing the equities between two innocent lienholders, the threshold question is whether the lender whose instrument was wrongfully cancelled was "in any way responsible" for the harm. We conclude that, regardless of the test applied in this case, Household's actions or inactions do not preclude Household from having its Deed of Trust reinstated as the superior lien.

In *First Financial*, the sole issue on appeal was whether First Financial Savings Bank was negligent in giving its mortgagor, Mr. Sledge, possession of an unrecorded release deed. This Court found that First Financial breached no duty in giving Mr. Sledge possession of the deed as "[t]here are neither cases nor statutes which require a mortgagee to record a release deed prior to delivering it to the mortgagor." *First Financial*, 106 N.C. App. at 88, 415 S.E.2d at 208. This Court thus held that "Mr. Sledge's alteration of the deed was an unauthorized act, and [First Financial Savings Bank was] in no way negligent for his act." *Id.* at 88-89, 415 S.E.2d at 208.

Similarly, here, there were neither statutes nor case law that imposed any duty on Household to respond to the Administrative Demand. The Dorean Group's cancellation of the Household Deed of Trust was an unauthorized act, and Household was in no way negligent for the Dorean Group's act. Furthermore, Household was "in no way responsible" for the Unauthorized Cancellation of the Household Deed of Trust, or any injury Fremont sustained as a result of the Dorean Group's fraud. Although Fremont contends that the Administrative Demand provided Household with a "roadmap" of the fraud several months before it occurred, upon reviewing the Administrative Demand, the trial court correctly found that "Household's failure to take affirmative action was not unreasonable[.]" The 38-page Administrative Demand, or so-called "roadmap," was a confusing compilation of, among other things: (i) various cartoons; (ii) various articles; (iii) a power of attorney; (iv) a "Notice of Intent to Correct Title"; (v) a so-called "Affidavit of Truth"; (vi) a letter from a purported certified public accountant; (vii) and various propaganda. To characterize this document as bizarre and absurd would be an understatement. The Administrative Demand was wholly inadequate to raise Household's suspicions of potential impending wrongdoing by the Dorean Group, especially since, as the trial court found, "the existence of the mortgage elimination scheme was not well known to mortgage companies such as Household and Fremont at the time" the Administrative Demand was delivered to Household. As it would not have occurred to anyone of ordinary business judgment and prudence to make any inquiry into the information contained therein, Household's inaction was reasonable. Furthermore, Household did not actually learn of the Unauthorized Cancellation until 26 October 2004, four days after Fremont extended its loan to Lambeth. As such, Household could not have prevented Fremont's harm by taking immediate action once it learned of the Unauthorized Cancellation, as the harm had already been done. Finally, Household

filed a lawsuit within four months of discovering the fraud, a reasonable time considering the substantial investigation required to address the fraudulent mortgage elimination scheme. Moreover, there is no evidence that Fremont suffered any injury based on any action or inaction during the time between Household's discovery of the Unauthorized Cancellation and Household's filing of a lawsuit. Accordingly, the trial court correctly concluded that Household's failure to respond to the Administrative Demand did not preclude Household from having its Deed of Trust reinstated as the superior lien. Fremont's assignment of error is overruled.

For the reasons stated, the trial court's judgment is

AFFIRMED.

Judges CALABRIA and ARROWOOD concur.