IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1077

Filed 20 August 2025

Mecklenburg County, No. 18CVS006946-590

DEUTSCHE BANK NATIONAL TRUST COMPANY, as TRUSTEE for
SOUNDVIEW HOME LOAN TRUST 2006-EQ1 ASSET-BACKED CERTIFICATES,
SERIES 2006-EQ1; 2006 MASTER ASSET-BACKED SECURITIES TRUST 2006-
HE5 MORTGAGE PASS THROUGH CERTIFICATES, SERIES HE5, by and through
U.S. BANK, NATIONAL ASSOCIATION, in its capacity as TRUSTEE under
POOLING and SERVICING AGREEMENT dated as of DECEMBER 1, 2006,
Plaintiffs,

v.

CYRIL N. GAYDOS; KARINA C. GAYDOS; MEHA BHUPENDRA SHAH; FENIL
HIREN KUMAR SHAH; GAYDOS & FAMILY 14716 VIA SORRENTO
CONDOMINIUM, INC.; U.S. BANK, NATIONAL ASSOCIATION s/i/i PINNACLE
BANK s/b/m BANK OF NORTH CAROLINA; PINNACLE BANK s/b/m BANK OF
NORTH CAROLINA; MILTON XAVIER EARQUHART a/k/a MILTON XAVIER;
JOHN DOES #1-10; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
solely as nominee for BANK OF NORTH CAROLINA and its successors and assigns,
Defendants.

Appeal by defendants Meha Bhupendra Shah, Fenil Hiren Kumar Shah, and

U.S. Bank, National Association s/i/i Pinnacle Bank s/b/m Bank of North Carolina

from order entered 26 October 2021 by Judge Robert C. Ervin in Superior Court,

Mecklenburg County.  Heard in the Court of Appeals 2 April 2024

*Alexander Ricks PLLC, by Ryan P. Hoffman, Benjamin F. Leighton, and David Q. McAdams, for defendants-appellants Meha Bhupendra Shah, Fenil Hiren Kumar Shah, and U.S. Bank, National Association s/i/i Pinnacle Bank s/b/m Bank of North Carolina.*

*McGuireWoods LLP, by Scott I. Perle, Bradley R. Kutrow, and Dylan M. Bensinger, for plaintiff-appellee Deutsche Bank National Trust Company.*

*No briefs filed by remaining parties.*

STROUD, Judge.

Defendants, Meha Bhupendra and Fenil Hiren Kumar Shah, along with U.S. Bank, National Association s/i/i Pinnacle Bank s/b/m Bank of North Carolina (collectively the "Shah Defendants"), appeal from an order granting summary judgment to Plaintiff Deutsche Bank National Trust Company ("Deutsche Bank") on its declaratory judgment claim to restore a fraudulently extinguished deed of trust and giving Deutsche Bank priority to subsequent interests following the entry of final judgment disposing of all remaining claims. On appeal, the Shah Defendants argue the trial court erred in granting summary judgment because the deed of trust had a fatal patent ambiguity and failed to encumber the property at issue. After careful review, we affirm the trial court's entry of summary judgment in favor of Deutsche Bank.

## I. Background

The subject property at issue is a condominium located at 14716 Via Sorrento Drive in Charlotte, North Carolina, Tax Parcel ID: 223-545-47, known as Unit 7104 of Belle Vista Condominiums (hereafter the "subject property").

On 5 April 2018, Deutsche Bank[1] initiated this action by filing summonses and a complaint alleging that Defendants, Cyril N. and Karina C. Gaydos, Gaydos & Family 14716 Via Sorrento Condominium, Inc., Xavier Milton Earquhart a/k/a Milton Xavier, and John Does #1-10 (collectively the "Gaydos/Earquhart Defendants") successfully conspired to file a fraudulent satisfaction of a deed of trust for the subject property held by Deutsche Bank. Deutsche Bank sought monetary damages from the Gaydos/Earquhart Defendants and a declaratory judgment against all named defendants, including the Shahs, who were innocent subsequent purchasers for value of the subject property. In the declaratory judgment claim, Deutsche Bank sought to restore the fraudulently extinguished deed of trust and to have its interest named superior to that held by the Shahs' mortgagee. An amended complaint was filed on 4 May 2018, adding Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS"), as a party.

On 10 February 2020, the Shah Defendants filed their answer with a motion to dismiss, and Deutsche Bank voluntarily dismissed its claims against the individual Gaydos defendants (the "Gaydoses"), MERS, and John Does #1-10. The following day, Deutsche Bank obtained an entry of default as to the remaining Gaydos/Earquhart

---

[1] Deutsche Bank was joined by its co-plaintiff, 2006 Master Asset-Backed Securities Trust 2006-HE5 Mortgage Pass Through Certificates, Series HE5, by and through U.S. Bank National Association in its capacity as Trustee under Pooling and Servicing Agreement dated as of December 1, 2006. Deutsche Bank's co-plaintiff ultimately dismissed its claims and is therefore omitted from discussion in this opinion.

Defendants based on their failure to plead or otherwise defend against the action. The Shah Defendants then moved for summary judgment on 25 June 2020, and Deutsche Bank did the same on 5 August 2020.

The trial court heard the parties' pending dispositive motions on 19 July 2021 and entered an "Order on Motions to Dismiss and Motions for Summary Judgment" on 26 October 2021, which denied the Shah Defendants' motions to dismiss and granted summary judgment in favor of Deutsche Bank on its claim for declaratory relief against the Shah Defendants, ordering Deutsche Bank's deed of trust is superior in time and priority over the Shah Defendants' interest in the subject property and any subsequent liens or interests granted by the Shahs. Deutsche Bank then moved for, and received, a "Final Default Judgment" against the defaulted Gaydos/Earquhart Defendants on 5 April 2022.

The Shah Defendants appealed from the summary judgment order following entry of the default judgment. By unpublished opinion filed on 21 March 2023, this Court dismissed the Shah Defendants' first appeal as interlocutory because the purported final default judgment and the other orders contained in the record only resolved Deutsche Bank's claims for declaratory relief and did not resolve its claims for monetary relief against the Gaydos/Earquhart Defendants. *See Deutsche Bank Nat'l Trust Co. v. Gaydos*, 288 N.C. App. 191, 884 S.E.2d 78, 2023 WL 257731, *2 (2023) (unpublished).

Following the dismissal of the appeal, on 4 May 2023, Deutsche Bank and the

Shah Defendants filed a stipulation of voluntary dismissal under North Carolina General Statute Section 1A-1, Rule 41(a)(1)(ii), thus dismissing Deutsche Bank's "claims for monetary relief against the remaining Gaydos/Earquhart Defendants and any remaining claims *other than* those previously resolved in [Deutsche Bank's] favor by [the trial court's summary judgment and default judgment o]rders dated 26 October 2021 and 5 April 2022." (Emphasis in original.) On the same day, Deutsche Bank and the Shah Defendants also filed a joint motion for entry of final judgment in accordance with the declaratory relief granted in the summary judgment and default judgment orders previously entered.

The trial court heard the parties' motion for entry of final judgment on 17 July 2023 and granted the motion based on its determination that all claims had been adjudicated between the 26 October 2021 summary judgment order, the 5 April 2022 default judgment order, and the 4 May 2023 stipulation of voluntary dismissal of all remaining claims. On 6 September 2023, the trial court entered a "Final Judgment" in accordance with the 26 October 2021 summary judgment order and the 5 April 2022 default judgment order and dismissed all remaining claims.

The Shah Defendants have now appealed, again, from the trial court's 26 October 2021 summary judgment order, noting that final judgment was entered on 6 September 2023.

## II.    Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such

judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and quotation marks omitted); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023) (providing summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law").

"Likewise, whether the language of a contract is ambiguous is a question of law to be reviewed de novo." *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680, 821 S.E.2d 360, 366 (2018); *see also Bank of America, N.A. v. Schmitt*, 263 N.C. App. 19, 22, 823 S.E.2d 396, 398 (2018) ("The construction of the terms of a deed, including the question of the property the deed is intended to cover, has historically been a question of law for the court[.]"). "When reviewing a matter de novo, this Court considers the matter anew and freely substitutes its own judgment for that of the lower courts." *Upchurch v. Harp Builders, Inc.*, 385 N.C. 816, 818, 898 S.E.2d 713, 715 (2024) (citations and quotation marks omitted).

### III.    Analysis

On appeal, the Shah Defendants argue the trial court erred as a matter of law in determining the Gaydos deed of trust held by Deutsche Bank was a valid and enforceable lien and had priority over their interest in the subject property. The Shah

Defendants thus contend the trial court erred in entering summary judgment in favor of Deutsche Bank on its claim for declaratory relief.

The material facts relevant for summary judgment are not in dispute. The Gaydoses entered a contract with a condominium developer to buy the subject property in March 2006. Documents executed in anticipation of the purchase— including the purchase contract with addendums, an appraisal, a HUD Settlement Statement, and an adjustable-rate note—make it clear the Gaydoses were purchasing the subject property, Unit 7104. When the purchase closed on 16 June 2006, the condominium developer executed a general warranty deed intending to convey the subject property to the Gaydoses (the "initial Gaydos vesting deed"), and the Gaydoses executed a note secured by a deed of trust in favor of its mortgagee, Deutsche Bank's predecessor-in-interest, EquiFirst Corporation (the "Gaydos deed of trust").[2] The initial Gaydos vesting deed and the Gaydos deed of trust were recorded in the Mecklenburg County Register of Deeds on 19 June 2006.

The initial Gaydos vesting deed and the Gaydos deed of trust, as recorded in June 2006, correctly listed the address and the tax parcel number for the subject property throughout the documents; and the initial Gaydos vesting deed included a brief description at the top of the document identifying the subject property as "Unit

---

[2] A second note and deed of trust were also executed by the Gaydoses to accomplish the condominium purchase. The second deed of trust is not at issue because it was assigned to Deutsche Bank's co-plaintiff, who dismissed its claims.

7104, Bldg 7 of Belle Vista Condominium, Phase V." However, the legal description of the subject property in the initial Gaydos vesting deed and attached to the Gaydos deed of trust incorrectly listed "Unit No. 7301, Building 7 of Belle Vista Condominium, Phase V" instead of identifying "Unit 7104." Unit 7301 is a separate property within the same condominium complex as the subject property but has a different address and different tax parcel number from the subject property.

Public records show that within one year of the Gaydoses' purchase of the subject property, on 21 May 2007, a second general warranty deed (the "second Gaydos vesting deed") was recorded that correctly identified Unit 7104 in the legal description and explained that "the purpose of this deed is to convey the correct property." Along with the recording of the second Gaydos vesting deed, the Gaydos deed of trust was rerecorded on 21 May 2007 with a correction in the attached legal description to identify Unit 7104. The Gaydos deed of trust was later assigned to Deutsche Bank by an assignment executed on 18 July 2014 and recorded on 25 August 2014.

After the Gaydoses filed for bankruptcy in July 2013, in May 2014, the condominium owners' association obtained relief from the bankruptcy stay to foreclose on the subject property due to unpaid assessments. The owners' association ultimately acquired title to the subject property by foreclosure deed executed and recorded on 13 March 2015 and, within approximately two months, conveyed the subject property to Gaydos & Family 14716 Via Sorrento Condominium, Inc. ("Gaydos

& Family"), a business entity associated with the Gaydoses, by non-warranty deeds recorded in April and May 2015. In the same time frame as Gaydos & Family acquired title to the subject property, fraudulent satisfactions of the Gaydos deed of trust were recorded as part of a scheme allegedly orchestrated by the Gaydos/Earquhart Defendants.

Just two months later, on 7 July 2015, the Shahs purchased the subject property from Gaydos & Family and took title by general warranty deed (the "Shah vesting deed") under the belief that there were no outstanding liens. In connection with the purchase, the Shahs executed a note secured by deed of trust for the subject property in favor of their mortgagee (the "Shah deed of trust"). The Shah vesting deed and the Shah deed of trust were recorded on 8 July 2015.

## A. Validity of Deutsche Bank's Interest

The Shah Defendants first challenge the validity of Deutsche Bank's interest in the subject property, arguing that the Gaydos deed of trust never encumbered the subject property because (1) the Gaydos deed of trust as initially recorded was patently ambiguous and void as a result of the incorrect unit number in the attached legal description, and (2) efforts to correct and rerecord the Gaydos deed of trust were of no consequence. We disagree.

"In order to be valid, a deed or deed of trust must contain a legal description of the land 'sufficient to identify it' or refer 'to something extrinsic by which the land may be identified with certainty.'" *MTGLQ Inv'rs, L.P. v. Curnin*, 263 N.C. App. 193,

195, 823 S.E.2d 409, 411 (2018) (quoting *Overton v. Boyce,* 289 N.C. 291, 293, 221 S.E.2d 347, 349 (1976)). "The entire deed should be considered when determining the identity of the land conveyed." *Id.* "The courts seek to sustain a deed if possible on the assumption that the parties intended to convey and receive land or they would never have been involved in the first place." *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 462, 490 S.E.2d 593, 597 (1997) (citation and quotation marks omitted).

"When it is apparent upon the face of the deed, itself, that there is uncertainty as to the land intended to be conveyed and the deed, itself, refers to nothing extrinsic by which such uncertainty can be resolved, the description is said to be patently ambiguous." *Overton*, 289 N.C. at 294, 221 S.E.2d at 349. As the Court in *Overton* explained, "[a] patent ambiguity is such an uncertainty appearing on the face of the instrument that the court, reading the language in the light of all the facts and circumstances *referred to in the instrument*, is unable to derive *therefrom* the intention of the parties as to what land was to be conveyed." *Id.* (emphasis in original) (citation, quotation marks, and parenthesis omitted). "Patent ambiguities arise when the uncertainty as to the meaning of a contract is so great as to prevent the giving of any legal remedy, direct or indirect." *Thomco Realty, Inc. v. Helms*, 107 N.C. App. 224, 227-28, 418 S.E.2d 834, 836 (1992) (citation and quotation marks omitted).

On the other hand, "[a] description is latently ambiguous if it is insufficient in itself to identify the property but refers to something extrinsic by which identification

might possibly be made." *Bradshaw v. McElroy*, 62 N.C. App. 515, 516, 302 S.E.2d 908, 910 (1983) (citation and quotation marks omitted). "Latent ambiguities arise when there is confusion as to how to apply the words of an instrument to the object or subject which they describe. While an instrument containing a latent ambiguity is still enforceable (if extrinsic evidence exists to clarify the ambiguity), a patently ambiguous instrument is void." *Thomco Realty, Inc.*, 107 N.C. App. at 227, 418 S.E.2d at 836.

In arguing the Gaydos deed of trust is patently ambiguous, the Shah Defendants rely on *Overton*, in which the Court reviewed a deed purporting to convey a Chowan County tract of land described only as "a certain tract of Pocosin Land adjoining the lands of the late Henderson Luton & others, containing, by estimation, Three Hundred and Nineteen Acres." *Overton*, 289 N.C. at 291, 221 S.E.2d at 348. Upon review, the Court in *Overton* explained: "[a]ll that the deed tells us about the land is that it is 'pocosin land,' i.e., swamp land, in Chowan County, it adjoins the lands of the late Henderson Luton and contains, by estimation, 319 acres[,]" *id.* at 294, 221 S.E.2d at 349 (emphasis omitted); "[i]t is a matter of common knowledge there are numerous, extensive tracts of pocosin land in Chowan County[,]" *id.* at 294, 221 S.E.2d at 349-50; and there were three separate recorded deeds conveying large tracts of Chowan County land to Henderson Luton, with each tract having one or more boundaries running along or through pocosin land, *see id.* at 294-95, 221 S.E.2d at 350. Because the deed left the reader in doubt as to the exact area and boundaries

of the land intended to be conveyed and "refer[red] to nothing extrinsic to which one may turn in order to identify with certainty the land intended to be conveyed[,]" the Court held the deed was patently ambiguous and void. *Id*. at 294, 221 S.E.2d at 349.

Unlike in *Overton*, "[i]n the present case, the location and/or boundaries of the [property identified in the deed of trust] are not in dispute." *Schmitt*, 263 N.C. App. at 22, 823 S.E.2d at 398. The Gaydos deed of trust appears on its face to clearly identify the property to be encumbered. The ambiguity is revealed upon application of the legal description when it becomes evident that two separate condominium units are identified—the subject property by tax parcel number and address, and Unit 7301. The Shah Defendants assert that "[i]t is entirely unclear what property is being . . . encumbered given the conflicting descriptions" and "[f]rom the face of the [initial Gaydos vesting deed] and the [Gaydos deed of trust], it is just as plausible that the parties sought to convey and encumber Unit 7301 as it is that they sought to convey and encumber the [subject property]." The Shah Defendants contend there is nothing extrinsic referenced in the recorded documents to clarify the ambiguity and thus conclude that "under the *Overton* framework, . . . the legal descriptions in the [initial Gaydos vesting deed and the Gaydos deed of trust] are patently ambiguous and, as such, are void."

On the other hand, Deutsche Bank contends any ambiguity is, at most, a latent ambiguity, and the inclusion of the street address and tax parcel number for the subject property are "refer[ences] to extrinsic data which describe the [s]ubject

[p]roperty with certainty" and resolve the ambiguity. Deutsche Bank relies on *Schmitt*, 263 N.C. App. at 23, 823 S.E.2d at 399, as an example of this Court prioritizing tax parcel numbers and the street address in an inconsistent legal description. Deutsche Bank also relies on *In re Thompson*, 253 N.C. App. 46, 799 S.E.2d 658 (2017) ("*Thompson*"), and *In re Reed*, 233 N.C. App. 598, 758 S.E.2d 902, 2014 WL 1464183 (2014) (unpublished) ("*Reed*"), to argue "ambiguities caused by scrivener's errors in legal descriptions were latent rather than patent ambiguities and did not void the deeds of trust at issue" where the tax parcel numbers included in the deeds of trust resolved the ambiguity created by the errors. Upon review of those cases, we agree with the Shah Defendants this case is distinguishable.

In *Schmitt*, this Court discussed whether a deed of trust that referenced two separate tracts of property encumbered either tract individually, or both tracts, where the deed of trust included a legal description of one tract, the address for a second tract, and the parcel numbers for both tracts. *Schmitt*, 263 N.C. App. at 22-23, 823 S.E.2d at 398. Upon review of the entire deed to discern the parties' intent, this Court determined as a matter of law the deed evinced an intent to encumber both properties and was sufficient to do so where the "descriptions *did not conflict . . .* but rather identif[ied] the entirety of [both tracts] as the property encumbered by the deed of trust." *Id.* at 24, 823 S.E.2d at 399 (emphasis added) (citation, quotation marks, and brackets omitted). Thus, in *Schmitt,* the Court did not give the tax parcel number or address priority over a conflicting description. *See id.* There is no

contention in this case the Gaydos deed of trust was intended to encumber both properties identified in the attached legal description, and, in contrast to *Schmitt*, the identification of both the subject property by tax parcel number and address and the identification of Unit 7301 are in conflict.

Similarly, in *Thompson* and *Reed*, the tax parcel numbers, and the address in *Thompson*, were not prioritized over a conflicting description of another existing property. In both *Thompson* and *Reed*, the deeds of trust at issue contained what this Court held to be scriveners' errors in the description of the encumbered property. *Thompson*, 253 N.C. App. at 52, 700 S.E.2d at 663; *Reed*, 2014 WL 1464183, at *4. In *Thompson*, the error was the identification of a plat number in a non-existent "Section II-C" instead of an existing "Section III-C," 253 N.C. App. at 49, 799 S.E.2d at 661, and in *Reed*, the error was the misspelling of Navajo in the street address as "Navahjo[,]" 2014 WL 1464183, at *4. In both cases, the errors in the deeds of trust resulted in the identification of property that did not exist, and this Court determined based on information included and referenced within the four corners of the deeds of trust, including tax parcel numbers, the intent of the parties was clear and the deeds of trust contained a description of land sufficient to identify the encumbered property despite the scriveners' errors. *Thompson*, 253 N.C. App. at 52-53, 700 S.E.2d at 663-64; *Reed*, 2014 WL 1464183, at *4. Here, even if the inclusion of Unit 7301 was merely a scrivener's error, it is an existing condominium within the same complex as the subject property, and the identification of both Unit 7301 and the subject property in

the legal description attached to the Gaydos deed of trust are in conflict. Since the subject property is identified in the attached legal description only by tax parcel number and address, the tax parcel number and address are part of the conflicting descriptions and do not provide clarity.

Although we agree with the Shah Defendants *Schmitt, Thompson,* and *Reed* are distinguishable, and including the subject property's tax parcel number and address in the attached legal description is not enough on its own to resolve the ambiguity created by the inclusion of Unit 7301, we disagree the conflicting descriptions in the attached legal description create a patent ambiguity in this case that results in a void deed of trust.

The legal description attached to the Gaydos deed of trust is not considered in isolation when determining whether the subject property is sufficiently identified to create a valid lien on the property; it must be considered within the context of the entire deed of trust. *See MTGLQ Inv'rs, L.P.,* 263 N.C. App. at 195, 823 S.E.2d at 411. Apart from the conflicting identifications in the attached legal description, the Gaydos deed of trust, including the attached adjustable rate rider and the attached condominium rider, consistently identify the subject property by address and tax parcel number, reinforcing the intent to encumber the subject property and indicating the inclusion of Unit 7301 in the attached legal description was wrong. Moreover, the attached legal description also references the loan number for the note secured by the Gaydos deed of trust and the initial Gaydos vesting deed recorded

simultaneously with the Gaydos deed of trust. Documents executed in connection with the loan and included in the record, including the note, clearly identify the subject property. And although the initial Gaydos vesting deed included a single reference to Unit 7301 in the legal description, the deed also correctly identified Unit 7104 in a brief description at the top of the deed, corresponding to the tax parcel number and address provided throughout the deed and demonstrating the intent to convey the subject property. We are satisfied from our review of the Gaydos deed of trust, and the documents referenced therein the intent to encumber the subject property is clear.

And perhaps most important, the Gaydos deed of trust was corrected to identify Unit 7104 in the attached legal description and rerecorded on 21 May 2007, within one year of its initial recording. Assuming the Gaydos deed of trust was ambiguous as initially recorded, any ambiguity was resolved by the rerecording of the deed of trust with the corrected legal description.

Although the Shah Defendants acknowledge North Carolina General Statute Section 47-36.1 provides "a process for correcting errors in recorded documents[,]" they assert curative efforts to correct the Gaydos deed of trust were ineffective because a legal description cannot be changed *via* North Carolina General Statute Section 47-36.1. In support of their contention a legal description cannot be changed *via* North Carolina General Statute Section 47-36.1, the Shah Defendants cite to the statute and *Green v. Crane*, 96 N.C. App. 654, 386 S.E.2d 757 (1990). But neither the

statute nor *Green* stand for such a broad rule.

When the Gaydos deed of trust was corrected and rerecorded on 21 May 2007,

North Carolina General Statute Section 47-36.1 stated that:

> [A]n obvious typographical or other minor error in a deed or other instrument recorded with the register of deeds may be corrected by rerecording the original instrument with the correction clearly set out on the face of the instrument and with a statement of explanation attached. The parties who signed the original instrument or the attorney who drafted the original instrument shall initial the correction and sign the statement of explanation. If the statement of explanation is not signed by the parties who signed the original instrument, it shall state that the person signing the statement is the attorney who drafted the original instrument. The statement of explanation need not be acknowledged. Notice of the correction made pursuant to this section shall be effective from the time the instrument is rerecorded.

N.C. Gen. Stat. § 47-36.1 (2007).

In *Green*, this Court reviewed a joinder agreement rerecorded under North

Carolina General Statute Section 47-36.1 in an attempt to correct the omission of a

six-acre tract the defendants had admitted was "inadvertently left out." 96 N.C. App.

at 658, 386 S.E.2d at 759. Although the trial court found the rerecorded joinder

agreement was sufficient to incorporate the additional six-acre tract, this Court

reversed the trial court, holding the rerecorded joinder agreement that added to the

description of property and enlarged the property was "not the correction of an

obvious typographical or clerical error." *Id.*

In contrast to *Green,* the rerecorded deed here does not add to the legal

- 17 -

description or enlarge the property to be encumbered. Here, the rerecorded Gaydos deed of trust corrected the unit number in the attached legal description by crossing out "7301" and replacing it with "7104[,]" thus aligning the unit number with the subject property already identified by tax parcel number and address throughout the Gaydos deed of trust. In compliance with North Carolina General Statute Section 47-36.1, the rerecorded Gaydos deed of trust includes a statement of explanation stating that "THIS DEED OF TRUST IS BEING RE-RECORDED TO CORRECT THE UNIT NUMBER ON THE EXHIBIT 'A' LEGAL DESCRIPTION[,]" and the correction in the legal description is clearly marked and initialed by the closing attorney. We are satisfied the correction of the unit number in the legal description attached to the Gaydos deed of trust was a correction of "an obvious typographical or other minor error" and complied with North Carolina General Statute Section 47-36.1 (2007).[3]

Having determined the intent to encumber the subject property is clear from the Gaydos deed of trust and documents referenced therein, and the rerecorded

---

[3] We note that the statutes governing corrections of errors in recorded instruments have been amended several times since the rerecording of the Gaydos deed of trust, and our holding may be different if limitations adopted in the amendments applied to the instant case. *See* N.C. Gen. Stat. § 47-36.2(a)(4) (2023) (defining an "obvious description error" to exclude "any error in the legal description that operates to convey any interest in real property that the grantor, trustor, mortgagor, or assignor owned at the time of conveyance but did not intend to convey"). But amendments to North Carolina General Statute Section 47-36.1, and the more recently enacted North Carolina General Statute Section 47-36.2, do not apply retroactively, *see* 2017 N.C. Sess. Laws 2017-110, sec. 5, and the amendments have consistently provided that "[n]othing in this section invalidates or otherwise alters the legal effect of any instrument of correction authorized by statute in effect on the date the instrument was registered." N.C. Gen. Stat. § 47-36.1(a) (2023).

Gaydos deed of trust was sufficient to correct the incorrect listing of the Unit 7301 in the attached legal description, we hold the Gaydos deed of trust was not void as patently ambiguous, and the Gaydos deed of trust was a valid lien encumbering the subject property.

**B. Equity**

The Shah Defendants alternatively argue, even if the Gaydos deed of trust was a valid lien encumbering the subject property, the Shahs were innocent third-party purchasers for value, and Deutsche Bank was in the best position to discover the recordation of the fraudulent satisfactions of the security instrument and should bear any loss between the parties. The Shah Defendants rely on "the equitable principle that where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss." *Johnson v. Schultz*, 364 N.C. 90, 93, 691 S.E.2d 701, 704 (2010) (citation omitted). In *Johnson*, the Court addressed "how North Carolina law allocates the risk of loss between a buyer and a seller when the closing attorney in a residential real estate transaction embezzles the sales proceeds." *Id.* at 91, 691 S.E.2d at 703. The Court held that

> after considering the procedures customarily used for residential real estate closings and applying long-standing principles of equity, we hold that buyers must bear the loss caused by the misconduct of their own retained attorney. We stress that it is the buyer alone in most residential real estate transactions who is legally deemed to repose confidence in the closing attorney through the existence of

- 19 -

the attorney-client relationship.

*Id.* at 96, 691 S.E.2d at 705-06.

Unlike *Johnson*, this case does not involve loss in a real estate transaction between the parties, Deutsche Bank and the Shah Defendants. In fact, there is no indication Deutsche Bank ever had dealings with the Shahs before filing this case. As detailed above, the record shows Deutsche Bank was assigned the Gaydos deed of trust in July 2014, over eight years after the Gaydoses executed the deed of trust in favor of Deutsche Bank's predecessor-in-interest after the Gaydoses had entered bankruptcy. Within months of the assignment to Deutsche Bank, the condominium owners' association foreclosed on the subject property, the owners' association conveyed the property to Gaydos & Family, fraudulent satisfactions of the Gaydos deed of trust were filed, and the Shahs purchased the property from Gaydos & Family unaware the satisfactions were fraudulent.

In circumstances in this case, where two innocent parties are victims of a fraudulent satisfaction scheme of a third-party, our Courts have acknowledged a different long-standing rule in North Carolina:

> As between a mortgagee, whose mortgage has been discharged of record solely through the act of a third person, whose act was unauthorized by the mortgagee, and for which he is in no way responsible, and a person who has been induced by such cancellation to believe that the mortgage has been canceled in good faith the equities are balanced, and the lien of the prior mortgage, being first in order of time, is superior.

*Household Realty Corp. v. Lambeth*, 188 N.C. App. 545, 549, 656 S.E.2d 336, 339-40 (2008) (quoting *Union Cent. Life Ins. Co. v. Cates*, 193 N.C. 456, 462, 137 S.E. 324, 327 (1927) (citation and ellipses omitted)).

> The discharge of a perfected mortgage upon public record by the act of an unauthorized third party entitles the mortgagee to restoration of its status as a priority lienholder over an innocent purchaser for value. The owner of a mortgage, however, will lose priority over an innocent purchaser if the mortgagee is negligent with respect to the release of the mortgage.

*Id.* at 551, 656 S.E.2d at 340 (citation and quotation marks omitted).

Nothing in the record tends to show Deutsche Bank was involved in, aware of, enabling, or negligent regarding the fraudulent satisfactions filed to extinguish the Gaydos deed of trust. Even on appeal, the Shah Defendants merely speculate that Deutsche Bank "had the superior ability to discover and guard against the fraud and commercial relationship with a party who *may have been* involved in the underlying fraudulent scheme." (Emphasis added.).

Applying the rule from *Household Realty Corp.*, we hold the trial court correctly restored the fraudulently satisfied Gaydos deed of trust held by Deutsche Bank to its superior position in priority over the interests acquired by, or granted by, the Shahs as a subsequent innocent purchaser for value. *See id.* The Shah Defendants' equity argument is overruled.

### IV. Conclusion

The Gaydos deed of trust, recorded on 19 June 2006 and rerecorded on 21 May

2007, created a valid lien encumbering the subject property. The Gaydos deed of trust was properly restored to its superior priority over any subsequently acquired interests in the subject property after fraudulent satisfactions were filed to extinguish the Gaydos deed of trust. We affirm the trial court's entry of summary judgment in favor of Deutsche Bank, the holder of the Gaydos deed of trust.

AFFIRMED.

Judges TYSON and GORE concur.